FILED
2016 Oct-31  AM 10:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## HUNTSVILLE DIVISION

| | |
|---|---|
| John K. and Karen E. White, as parents and next friend of their minor daughter, I.W.,) ) Shawn and Lauren Anderson, as parents and next friend of their minor daughter, A.A.,) ) John G. Smith, as parent and next friend of his minor daughter, L.S., ) ) Plaintiffs, ) ) v. ) ) Huntsville City Schools Board of Education, a/k/a Huntsville City Schools; and Does 1 through 50, ) ) Defendants. ) | Case No. _____ |

## COMPLAINT

The above-captioned Plaintiffs, John K. and Karen E. White, as parents and

next friend of their minor daughter, I.W.; Shawn and Lauren Anderson, as parents and

next friend of their minor daughter, A.A.; and John G. Smith, as parent and next

friend of his minor daughter, L.S., ("Plaintiffs"), respectfully file this Complaint

1

against Defendants, Huntsville City Schools Board of Education, a/k/a Huntsville City Schools and Does 1 through 50, ("Defendants"), and allege as follows:

## STATEMENT OF THE CASE

1. This action is posed for declaratory and injunctive relief. Defendants have violated (1) Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq*. ("Title IX") and the regulations adopted thereto, and (2) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, by illegally and intentionally denying Plaintiffs' daughters the equal treatment and benefits that must necessarily accompany an equal opportunity to participate in athletics.

2. Defendants' denial of equal treatment and benefits constitutes intentional discrimination against the Plaintiffs' daughters based solely on their gender. Specifically, Defendants have discriminated against Plaintiffs' daughters in the following areas: (1) funding of athletics; (2) provision of equipment and supplies; (3) scheduling of games and practice times; (4) travel and/or per diem; (5) opportunities to receive coaching; (6) provision of locker rooms and facilities for both practice and competition; (7) provision of training and/or medical facilities and services; and (8) provision of publicity.

2

3.   This action seeks to redress the deprivation of the Plaintiffs' daughters' rights to receive the equal treatment and benefits which must necessarily accompany an equal opportunity to participate in interscholastic and other school-sponsored athletics.  This action seeks a Declaratory Judgment that Defendants have violated the Plaintiffs' daughters' rights under federal law.  This action further seeks an injunction requiring Defendants to immediately cease their discriminatory practices and to remedy the effects of their discriminatory practices and to remedy the effects of their discriminatory conduct.

4.   Plaintiffs seek injunctive relief which, among other things, requires that Defendants provide Plaintiffs' daughters with treatment and benefits equivalent to that provided to the boys' athletic teams at Huntsville City Schools.

## JURISDICTION AND VENUE

5.   The Plaintiffs' first claim arises under 20 U.S.C. §1681, *et seq*. and its interpreting regulations.  Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

6.   The Plaintiffs' second claim arises under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

3

Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

7.  Jurisdiction for declaratory and other relief is invoked pursuant to 28 U.S.C. §§ 2201(a) and 2202.

8.  Venue is proper pursuant to 28 U.S.C. § 1391(b).  These claims arose in Huntsville, Madison County, Alabama which is within the jurisdiction of this Court.

## THE PARTIES

9.  Plaintiffs John K. and Karen E. White are the parents of I.W., a 14-year-old 9th grade student at Huntsville High School.  I.W. is a talented athlete who participates in softball at Huntsville High School.  She has endured the unequal treatment and benefits directed by Huntsville City Schools toward its female athletes. John K. White, Karen E. White and I.W. are residents of Gurley, Alabama, which is within the jurisdiction of this Court.

10.  Plaintiffs Shawn and Lauren Anderson are the parents of A.A., a 15-year-old 10th grade student at Huntsville High School.  A.A. is a talented athlete who participates in softball at Huntsville High School.  She has endured the unequal treatment and benefits directed by Huntsville City Schools toward its female athletes.

4

Shawn Anderson, Lauren Anderson and A.A. are residents of Huntsville, Alabama, which is within the jurisdiction of this Court.

11.   Plaintiff John G. Smith is the parent of L.S., a 15-year-old 10th grade student at Huntsville High School.  L.S. is a talented athlete who participates in softball at Huntsville High School.  She has endured the unequal treatment and benefits directed by Huntsville City Schools toward its female athletes.  John G. Smith and L.S. are residents of Huntsville, Alabama, which is within the jurisdiction of this Court.

12.   Defendant Huntsville City Schools is a public school district authorized by Alabama law to operate and control Huntsville High School, where the Plaintiffs' daughters play softball.  Therefore, Defendants' conduct is considered state action under 42 U.S.C. §1983.  Huntsville City Schools is located in Huntsville, Madison County, Alabama, and a substantial part of the events or omissions giving rise to this lawsuit occurred in Madison County, which is within the jurisdiction of this Court. Since the passage of Title IX, Huntsville City Schools has received and continues to receive federal financial assistance and the benefits therefrom.  Therefore, all programs at Huntsville City Schools, including athletics, are subject to the requirements of Title IX.

13.   The named Plaintiffs are ignorant of the true names and capacities of Does 1-50, but believe them to be employees of Huntsville City Schools or members of the Huntsville City Schools Board of Education.   Plaintiffs will seek to amend this Complaint to set forth their true names and capacities when they are ascertained. Plaintiffs are informed and believe, and on that basis allege, that each of these fictitiously named defendants is responsible in some manner for the discriminatory actions alleged herein and that each is a resident of the State of Alabama and thus is subject to the jurisdiction of this Court.

## GENERAL ALLEGATIONS
## THE REQUIREMENTS OF TITLE IX

14.   Title IX, enacted in 1972, provides in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).   The Civil Rights Restoration Act of 1987 made Congress' intent plain that "program or activity", as used in Title IX, applies to any program or activity so long as any part of the public institution receives federal financial assistance.   20 U.S.C. § 1687.   Thus, Huntsville City Schools is subject to Title IX

even if none of the funding for either its girls' or boys' athletic programs comes specifically from federal sources.

15.  In 1975, the Department of Health, Education and Welfare (the predecessor of the United States Department of Education ("DOE")) adopted regulations interpreting Title IX.  These regulations are codified at 34 C.F.R. Part 106.  (the "Regulations").

16.  With regard to athletic programs, § 106.41(a) of 34 C.F.R. provides that interscholastic athletics are included within the "program or activity" requirements of Title IX:

> No person shall, on the basis of sex, be excluded from participation in,
>
> be denied the benefits of, be treated differently from another person or
>
> otherwise be discriminated against in any interscholastic, intercollegiate,
>
> club or intramural athletics offered by a recipient ...

17.  34 C.F.R. § 106.41 (c) specifies ten (10) factors that are to be considered in the determination of equal athletic opportunity:

> 1.    Whether the selection of sports and levels of competition effectively
>
>        accommodate the interest and abilities of members of both sexes;
>
> 2.    The provision of equipment and supplies;

3.      Scheduling of games and practice time;

4.      Travel and per diem allowance;

5.      Opportunity to receive coaching and academic tutoring;

6.      Assignment and compensation of coaches and tutors;

7.      Provision of locker rooms, practice and competitive facilities;

8.      Provision of medical and training facilities and services;

9.      Provision of housing and dining facilities and services; and

10.     Publicity.

Another factor to be considered is a school's "failure to provide necessary funds for teams for one sex." *Id.*

18.   In 1979, the office of Civil Rights of the Department of Education ("OCR") issued a policy interpretation of Title IX and the Regulations.   This policy interpretation is found at 44 Fed. Reg. 71413 (1979) (the "Policy Interpretation").

19.   The Policy Interpretation provides that, in order to comply with Title IX and 34 C.F.R. § 106.41(c), schools must provide equal athletic opportunities in three general areas:   (1) awarding of scholarships (aimed primarily at problems at the intercollegiate level); (2) participation opportunities (including both the number of opportunities and whether the selection of sports and the level of competition

effectively accommodate the interests and abilities of members of both sexes); and (3) treatment and benefits.  44 Fed. Reg. at 71414.

20.    Under both the Regulations and the Policy Interpretation, compliance in the area of equal treatment and benefits is assessed based on an overall comparison of the male and female athletic programs, including an analysis of factors (2) through (10) of 34 C.F.R. § 106.41 (c) listed above and an analysis of whether the necessary funds are provided for teams of both sexes.

21.    The Regulations require that sponsors of interscholastic and other school-sponsored athletics (such as Huntsville City Schools) take such remedial actions as are necessary to overcome the effects of gender discrimination in violation of Title IX.  *See* 34 C.F.R. § 106.3(c).  On information and belief, any remedial actions which Defendants have taken in the past have been insufficient to satisfy Defendants' obligations under Title IX.

22.    The Regulations further require that sponsors of interscholastic and other school-sponsored athletics comply with the Regulations within three years of their effective date (which was July 21, 1975).  Now, more than forty-one (41) years later, Defendants have still not fully complied with Title IX.

9

## THE U.S. CONSTITUTION

23.  The Fourteenth Amendment to the United States Constitution requires that a state shall not "deny to any person within its jurisdiction the equal protection of the laws."

24.  Under 42 U.S.C. § 1983, Defendants may be held liable for their actions in violating Plaintiffs' daughters' rights under the Fourteenth Amendment.

## INJUNCTIVE RELIEF

25.  Plaintiffs are entitled to injunctive relief to end Defendants' unequal, discriminatory, and unlawful treatment of female student athletes.  Because of Defendants' acts and omissions, Plaintiffs' daughters continue to be deprived of the rights guaranteed to them by the United States Constitution and the laws of the United States.  Failure to grant the injunctive relief requested will result in irreparable harm to Plaintiffs' daughters in that Plaintiffs' daughters' rights will be violated and that Plaintiffs' daughters will never be able to participate in interscholastic and/or other school-sponsored athletics on an equal basis with their male classmates. Accordingly, Plaintiffs do not have an adequate remedy at law for this harm.  This threatened harm far outweighs any possible harm that granting injunctive relief might cause Defendants.  Finally, the injunctive relief sought would in no way disserve the

public interest but, on the contrary, would prevent discrimination based on gender and would promote the goal of full equality before the law.

## ATTORNEYS' FEES

26.   Plaintiffs have been required to retain the undersigned attorneys to prosecute this action.  Plaintiffs are entitled to recover reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## FIRST CLAIM FOR RELIEF: TITLE IX
### (Unequal Treatment and Benefits)
### (Against Huntsville City Schools Board of Education, a/k/a/ Huntsville City Schools only)

27.   Plaintiffs reallege and incorporate herein by this reference paragraphs 1 through 26 inclusive of this Complaint.

28.   Huntsville City Schools, by its conduct, has intentionally violated Title IX by knowingly and deliberately discriminating against female students, including the Plaintiffs' daughters, by failing to provide them with treatment and benefits which are comparable overall to the treatment and benefits provided to male athletes.

29.   On information and belief, Plaintiffs allege that Huntsville City Schools has failed to comply with Title IX by failing to provide their daughters with comparable treatment and benefits including, but not limited to, the following areas:

11

(1) Huntsville City Schools funds athletics in a manner that discriminates against Plaintiffs' daughters and other female athletes. For example, Huntsville City Schools allows the infusion of more outside funds for boys' sports as compared to girls' sports, including more money for the baseball program as compared to the softball program.

(2) Huntsville City Schools provides male athletes with equipment and supplies in a manner that discriminates against female athletes. For example, the softball program is required to pay for some of their essential equipment and supplies, such as balls, bats and pitching machines. As a further example, the baseball program is provided a mobile batting practice cage. The softball program is not provided with a mobile batting practice cage.

(3) Huntsville City Schools discriminates against Plaintiffs' daughters and other female athletes in the scheduling of games and practice times. For example, Huntsville City Schools provides opportunities for off-season training to the football and baseball programs that are superior to what is provided for the softball program.

(4)    Huntsville City Schools discriminates against Plaintiffs' daughters and other female athletes in the provision of per diem, in the form of pre-game meals, and travel.  For example, football players are routinely provided pre-game meals.  Baseball players also receive meals.  The softball players are not provided pre-game or post-game meals, and on information and belief no female athletes are provided pre-game or post-game meals.  As a further example, while the baseball team travels to some away games together on busses and sometimes airplanes, softball parents are responsible for all travel to and from games, in their personal vehicles.

(5)    Huntsville City Schools discriminates against Plaintiffs' daughters and other female athletes in the opportunities to receive coaching.  For example, the baseball program currently has seven coaches, while the softball program currently has one coach.

(6)    Huntsville City Schools supplies superior locker rooms, practice facilities and competition facilities to boys as compared to girls.  For example, the baseball program has been provided with a new brick facade locker room.  The softball locker room is an old, dilapidated

trailer.  The baseball locker room has central heat and air.  The softball locker room has a wall unit for heat and air conditioning, which does not work.  The baseball locker room has restroom facilities, sinks and shower facilities.  The softball locker room has no running water.  The baseball locker room has multiple exits from the building.  The softball locker room has one workable door.  The second door has no steps, so that there is a drop-off from the door to ground level.  The baseball locker room has a coaches' office large enough for eight individual coaches' desks.  The softball locker room has no coaches' office.  The baseball locker room has a media room.  The softball locker room has no media room.  The baseball locker room is connected directly to the home dugout.  The softball locker room is a separate structure from the home dugout.  The baseball locker room has a DirecTV-type service. The softball locker room has no such television hookup.  The baseball dugouts have electric lights.  The softball dugouts are wired for electric lights, but the lights do not work.  The baseball dugout floors are covered with rubber mats.  The softball dugout floors are bare concrete. The baseball dugouts have helmet and bat racks.  The softball dugouts

14

have no helmet or bat racks.  The baseball dugouts have finished ceilings.  The softball dugouts have unfinished, open-rafter ceilings. The baseball dugout benches are two-tier, major league-style benches with backs.  The softball dugout benches are slab benches set on cinder blocks.  The baseball dugout screens are superior to the softball dugout screens.  The baseball facility is completely enclosed with wrought-iron fencing and brick columns.  The softball facility is not fully enclosed. The baseball field has a ticket booth.  The softball field has no ticket booth.  The baseball facilities field lights are superior to the softball facilities field lights.  The baseball facility has two spacious bullpens, one for the home team and one for the visitors team.  The softball facility has one bullpen of inadequate size, which must be shared by the home and visitors teams.  The spectator seating at the softball field is inadequate, consisting of bench seating with no backs.  The baseball facility spectator seating includes stadium-type seating with backs.  The baseball program has an indoor hitting facility adjacent to its field.  The softball program has an outdoor hitting facility next to its field.  The baseball facility has superior signage and logos as compared to the

15

softball facility. The baseball facility has special lighting and landscaping with inlaid brick walkways. The softball facility has no special lighting, landscaping or inlaid brick walkways. The public restrooms at the baseball facility are larger than the public restrooms at the softball facility. The concession stand at the baseball facility is superior to the concession stand at the softball facility. The foundation of the backstop at the baseball facility is brick. The foundation of the backstop at the softball facility is cinder block. The warning tracks at the baseball field consist of crushed brick. The warning tracks at the softball field consist of crushed gravel. The baseball facility has numerous secure storage facilities. The softball facility has no secure storage areas. The baseball facility has an etched-stone mascot on its locker room wall. The softball facility has no such etched-stone mascot at their softball facility. The baseball facility is fully irrigated with an underground irrigation system. The softball facility is partially irrigated with an underground irrigation system. Maintenance at the baseball facility is superior to maintenance at the softball facility. The baseball

16

field has superior drainage as compared to the softball field.   The

baseball infield material is superior to the softball infield material.

(7)   Huntsville City Schools discriminates against Plaintiffs' daughters and

other female athletes in the provision of training facilities and services.

For example, the male athletes at Huntsville City Schools are provided

superior access to superior, appropriate weight training facilities and

weight training equipment as compared to female athletes, including

Plaintiffs' daughters.

(8)   Huntsville City Schools discriminates against Plaintiffs' daughters and

other female athletes as compared to male athletes in the provision of

publicity.   For example, Huntsville City Schools consistently provides

less publicity for its softball program as compared to its baseball and

football programs.

30.   The imbalance in the treatment of female and male athletes at Huntsville City

Schools, as detailed above, demonstrates Huntsville City Schools' intentional and

conscious failure to comply with Title IX.

31.  Huntsville City Schools' conduct has persisted despite the mandates of the Regulations, particularly 34 C.F.R. §§ 106.3(c) and 106.41(d), and the Policy Interpretation.

32.  Huntsville City Schools' conduct violates 20 U.S.C. § 1681 *et seq*., as interpreted by 34 C.F.R. §§ 106.31 and 106.41 and the Policy Interpretation thereof.

## SECOND CLAIM FOR RELIEF:  EQUAL PROTECTION
### (Against all Defendants)

33.  Plaintiffs reallege and incorporate herein by this reference paragraphs 1 through 32 inclusive of this Complaint.

34.  Defendants, by their failure to provide Plaintiffs' daughters with equivalent treatment and benefits as the male athletes (as detailed above), have purposefully and illegally discriminated against Plaintiffs' daughters and other female students on the basis of gender, and have intentionally and illegally deprived them of their rights to equal protection secured by the Fourteenth Amendment to the United States Constitution.

35.  Defendants have illegally failed and refused to remedy the unequal treatment and benefits received by Plaintiffs' daughters and other female athletes as compared

to male athletes at Huntsville City Schools.  Therefore, Defendants' actions constitute a knowing and illegal disregard for Plaintiffs' daughters' constitutional rights.

36.   Section 1983 of Title 42 of the United States Code provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

37.   When Defendants engaged in the improper actions described above, they were acting under color of law for purposes of the Equal Protection Clause of the United States Constitution and 42 U.S.C. § 1983.  Under this section, the Defendants are liable for their violations of the Plaintiffs' daughters' constitutional rights under the Fourteenth Amendment.

**RELIEF REQUESTED**

WHEREFORE, on each of their claims, Plaintiffs respectfully pray that this Court:

A.  Enter an order declaring that Defendants have engaged in a past and continuing pattern and practice of discrimination against female students, including Plaintiffs' daughters, on the basis of gender in violation of Title IX and the regulations promulgated thereunder (including unequal treatment and benefits), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

B. Issue a permanent injunction (a) restraining Defendants and their officers, agents, employees, successors and any other persons acting in concert with them, from continuing to maintain practices and policies of discrimination against Plaintiffs' daughters on the basis of gender, and (b) requiring Defendants, immediately upon issuance of the injunctive order, to adopt and implement a budget and plan which corrects and remediates Defendants' violation of Title IX and the Fourteenth Amendment.  Such a plan should include, among other things, providing Plaintiffs' daughters and other female athletes with treatment and benefits comparable to those provided to male athletes.

C.  Grant an expedited hearing and ruling on the permanent injunction request in paragraph B above.

D.  Award Plaintiffs their reasonable attorneys' fees and costs pursuant to U.S.C. § 1988.

E.  Order such other and further relief as the Court deems appropriate.

F.  Designate that the trial take place before the U. S. District Court in Huntsville, Alabama.

Dated: October 28, 2016

Respectfully submitted,

**s/ Samuel J. Schiller**
Tennessee Attorney Registration #021810
Oklahoma Bar Association #016067
Attorney for Plaintiffs
Schiller Law Firm
Suite 200, 4113 Cumby Road
Cookeville, TN 38501
Telephone: (931) 528-5050
Email: sjs@schillerlawfirm.com

**s/Rosalind G. Cylar**
Rosalind G. Cylar
ASB-0993-O78G
Attorney for Plaintiffs
109 Ivyridge Road
Madison, AL 35757
(256) 426-0423 (ph)
(256) 430-6850 (f)
Email: Roscylar@bellsouth.net

*Attorneys for Plaintiffs*